**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

JACOB ARTHUR LYLE,

    Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
EQUIFAX INFORMATION SERVICES, LLC,
TRANS UNION LLC, DISCOVER BANK, TD
BANK, N.A.,

    Defendants.

**Case No.:** 0:24-cv-61840

**JURY TRIAL DEMANDED**

## COMPLAINT

  Jacob Arthur Lyle ("Plaintiff" or "Mr. Lyle") brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Trans Union LLC ("Trans Union"), (collectively, "Credit Bureau Defendants"), Discover Bank ("Discover"), and TD Bank, N.A. ("TD Bank") (collectively "Defendants") and states as follows:

## INTRODUCTION

  1. Plaintiff, an identity theft victim, brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et. seq.

  2. More than twenty million people, just under 10% of all adult Americans, are victims of identity theft each year.[1] Federal Law requires that each consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics. April 2021, NCJ 256085.

that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests. This lawsuit arises from Defendant's refusal to comply with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

5.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer

reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

7.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

8.     One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

9.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine

whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

11.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." See 15 U. S.C. § 1681(a)(4).

12.     The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

13.     Plaintiff's claims arise out of the Defendants plainly deficient reinvestigations considering Plaintiff's multiple disputes and repeated notice that he was a victim of identity theft.

14.     Accordingly, Plaintiff brings claims against the CRA Defendants, for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i, and for failing to block the identity theft items

as disputed and supported by Plaintiff in violation of the FCRA, 15 U.S.C. § 1681c-2.

15.     Further, Plaintiff also brings claims against the Furnishers, Discover and TD Bank, for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of FCRA, 15 U.S.C. § 1681s-2b.

16.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., as described herein.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. See 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transacts business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

19.     Jacob Arthur Lyle ("Plaintiff" or "Mr. Lyle") is a natural person residing in Fort Lauderdale, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

20. Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Florida, including within this District. Equifax can be served through its registered agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA  30092.

*Jacob Arthur Lyle v. Experian Information Solutions, Inc. et. al.*
COMPLAINT

21.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)) to third parties.

22.     The information that Equifax collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.  Equifax also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

23.     Equifax collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to whether Equifax collects and maintains information about them.  Not only that, but consumers cannot remove information that Equifax collects and maintains about them from the Equifax database.  Further, Equifax sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Equifax sold.

24. Defendant Experian Information Solutions, Inc. ("Experian") is a corporation with a principal place of business located at 475 Anton Boulevard Costa Mesa, California, and is authorized to do business in the State of Florida, including within this District. Experian can be served through its registered agent CT Corporation System, 330 North Brand Blvd., Glendale, CA 91203.

25.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning

consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

26.     The information that Defendant Experian collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Defendant Experian also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

27. Defendant Trans Union, LLC ("Trans Union") is a corporation with a principal place of business located at 555 West Adams Street, Chicago, IL 60661, and is authorized to do business in the State of Florida, including within this District.  Trans Union can be served through its registered agent Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

28.     Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

29.     The information that Defendant Trans Union collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Defendant Trans Union also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

30. Defendant Discover Bank ("Discover") is a Delaware Corporation with a principal place

of business located at 2500 Lake Cook Rd. Riverwoods, IL 60015 and is authorized to do business in the State of Florida, including within this District. Discover can be served at the address of its Registered Agent, C T Corporation System, located at 1200 South Pine Island Road Plantation, FL 33324.

31.     Discover is a "Furnisher" as defined in 12 CFR 1022.41. Discover regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.   A data furnisher, such as Discover, is an entity that reports information about consumers to consumer reporting agencies (CRAs), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc.  Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. §1681s-2b of the FCRA.

32. Defendant TD Bank, N.A. ("TD Bank") has a principal place of business located at Two Portland Square Portland, ME 04112 and is authorized to do business in the State of Florida, including within this District. TD Bank can be served at the address of its Registered Agents, United States Corporation Company, located at 1201 Hays Street Tallahassee, FL 32301.

33.     TD Bank is a "Furnisher" as defined in 12 CFR 1022.41. TD Bank regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.   A data furnisher, such as TD Bank, is an entity that reports information about consumers to consumer reporting agencies (CRAs), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc.  Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. §1681s-2b of the FCRA.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

34.     The FCRA governs the conduct of consumer reporting agencies to preserve the

*Jacob Arthur Lyle v. Experian Information Solutions, Inc. et. al.*
COMPLAINT

integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

35.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681(a).

36.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  See 15 U.S.C. § 1681(b).

37.     Congress also recognized that CRAs such as Equifax and Trans Union "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers."  15 U.S.C. § 1681(a)(3).  Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

38.     For that reason, Congress ensured that the FCRA also provides special protections for victims of identity theft.

39.     The first form of protection is the "block."  When a consumer identifies any information in their credit file that is the product of identity theft, the CRA must block (delete) the reporting of that information within four business days, provided the consumer submits:

     a.     Appropriate proof of the identity of the consumer;

b.      A copy of an identity theft report;

c.      The identification of such information by the consumer; and,

d.      A statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).15 U.S.C. § 1681c-2(a).

40.     The second form of protection the FCRA provides for identity theft victims is the "fraud alert."

41.     Specifically, upon request of the consumer, a CRA must place an "initial fraud alert" in the file of that consumer, and provide that alert along with any credit score generated in using that file, for one year beginning on the date of the request.  Unless one year has passed, the CRA can only remove the alert if the consumer requests removal and the CRA receives "appropriate proof of the identity of the requester." 15 U.S.C. § 1681c-1(a)(1).

42.     The third form of protection the FCRA provides for identity theft victims is a "security freeze," which a consumer can request from nationwide CRAs such as the Defendant here.

43.     A security freeze prohibits a CRA from disclosing the contents of a consumer report that is subject to the freeze to any person requesting the consumer report.[2] 15 U.S.C. § 1681c-1(i)(1).  Stated otherwise, if a consumer's report is frozen, a CRA will not be able to sell it to creditors assessing credit applications from identity thieves using an affected consumer's identity.

44.     Once placed, a security freeze does not expire.  A CRA can remove a security freeze **only** at "the direct request of the consumer," or if it finds that the freeze "was placed due to a

_____

[2] Certain statutorily exempt entities can still request and receive a frozen report.  See 15 U.S.C. § 1681c-1(i)(4).  But those exemptions do not apply to the matter at hand.

*Jacob   Arthur   Lyle   v.   Experian Information Solutions, Inc. et. al.*
COMPLAINT

material misrepresentation of fact by the consumer." 15 U.S.C. § 1681c-1(i)(3)(A).  Furthermore, when a consumer requests removal, the CRA must first obtain "proper identification" from the consumer before removing the freeze."  15 U.S.C. § 1681c-1(i)(3)(C).

45.     The fourth and final form of protection the FCRA provides for identity theft victims is that even in the absence of a security freeze, a CRA may only release a consumer report to a person "which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. § 1681b(a). When a credit transaction is not initiated by the consumer, a CRA may **only** release the consumer's report with the consumer's authorization or if the user is making a firm offer of credit. 15 U.S.C. § 1681b(c).  No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose.  15 U.S.C. § 1681e(a).

46.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

47.     Similarly, the FCRA also imposes a duty upon the Furnishers, such as Discover and TD Bank, to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. (15 U.S.C. § 1681s-2b).

48.     The FCRA provides consumers with a private right of action against consumer reporting agencies, such as the CRA Defendants, and data furnishers such as Discover and TD Bank, that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Plaintiff Learns that his Identity was Stolen

49.     In or around August 2023, Plaintiff, in anticipation of applying for a home loan, reviewed his credit reports with all three Credit Bureau Defendants. Plaintiff wanted to invest in real property so that he could earn a supplemental income.

50.     Upon reviewing his credit reports, Plaintiff was shocked, horrified, and devastated when he saw that each of the Credit Bureau Defendants were reporting five (5) credit accounts that Plaintiff did not recognize, and which had very high balances and derogatory payment histories. Plaintiff also saw several hard inquiries that he did not recognize.

51.     Each Credit Bureau Defendant was reporting the following accounts, which were not opened by Plaintiff (each a "Fraudulent Account" and collectively, "Fraudulent Accounts"):

(a)  Best Buy credit card account ending in account number x6777;

(b)  Shell credit card account ending in account number x6089;

(c)  Brooks Brothers credit card account ending in account number x8055;

(d)  Discover credit card account ending in account number x6249; and

(e)  TD Bank credit card account with partial account number 48395027xxxx.

52.     Plaintiff never opened the Fraudulent Accounts, and the Fraudulent Accounts did not belong to Plaintiff.

53.     Furthermore, the Credit Bureau Defendant were reporting several hard inquiries and addresses that did not belong to Plaintiff.

54.     Plaintiff was shocked and worried about the impact that the Fraudulent Accounts would have on his credit and purchasing power and was further distressed over the fact that his identity had been stolen.

**Plaintiff Disputed the Fraudulent Accounts Directly with the Furnishers**

55.     Between August 2023 and October 2023 Plaintiff directly disputed all five (5) Fraudulent Accounts with each corresponding furnisher/creditor, Best Buy, Shell, Brooks Brother, Discover, and TD Bank (collectively, the Creditors"). Plaintiff informed the Creditors that the accounts were fraudulently opened and that he did not make of the purchases on the accounts.

56.     On or around September 29, 2023, Plaintiff received letters from Shell, Best Buy, and Brooks Brothers confirming that the Fraudulent Accounts opened through them did not belong to Plaintiff and were the result of fraud.

57.     On or about December 12, 2023, in response to Plaintiff's several attempts to directly dispute with Discover over the phone, Discover sent Plaintiff a letter stating that it verified the Fraudulent Account and considers the account and balance valid.

58.     In response to Plaintiff's several attempts to directly dispute with TD Bank over the phone, TD Bank continued to report the Fraudulent Account.

**Plaintiff's First Dispute to Experian**

59.     Concerned that the Creditors would continue to report and furnish inaccurate information to the Credit Bureau Defendants, in or around the time period between August 2023 and September 2023, Plaintiff disputed the Fraudulent Accounts and unrecognizable hard inquiries and addresses with Experian over the phone ("2023 Dispute"). Specifically, Plaintiff disputed that the aforementioned information was not his, but rather the product of fraud and identity theft.

60.     Plaintiff provided sufficient information to identity himself and support his dispute.

61.     Plaintiff requested that the identity theft information be removed from his credit file.

**Defendant Experian's Unreasonable 2023 Dispute Reinvestigation**

62.     Some time prior to October 10, 2023, Experian received Plaintiff's dispute and request that the identity theft information be blocked and removed from his credit file.

63.     Upon information and belief, Experian sent Discover and TD Bank an automated credit dispute verification ("ACDV") pursuant to Plaintiff's 2023 Dispute to Experian.

64.     Upon information and belief, Discover and TD Bank received Experian's ACDV and did not adequately reinvestigate Plaintiff's dispute.

65.     On or about October 10, 2023, Experian issued dispute results to Plaintiff wherein it communicated that it had deleted the accounts with Shell, Brooks Brothers, and Best Buy, and the unrecognizable hard inquiries. However, Experian stated that the disputed information with regards to the Discover account and TD Bank account were verified as accurate.

66.     Experian failed to adequately review all of the information provided to it by Plaintiff.

67.     Experian failed to reinvestigate Plaintiff's 2023 Dispute and failed to block and/or remove the Discover and TD Bank accounts, which were fraudulently opened without Plaintiff's knowledge or consent.

68.     Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

69.     Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Discover's Unreasonable 2023 Dispute Investigation

70.     Upon information and belief, Discover received Plaintiff's dispute from Defendant Experian and failed to adequately review all of the information provided by Plaintiff.

71.     Upon information and belief, Discover verified the disputed information as accurate in response to Experian's ACDV.

72.     Discover violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Fraudulent Account was the product of identity theft.

**TD Bank's Unreasonable 2023 Dispute Investigation**

73.     Upon information and belief, TD Bank received Plaintiff's dispute from Defendant Experian and failed to adequately review all of the information provided by Plaintiff.

74.     Upon information and belief, TD Bank verified the disputed information as accurate in response to Experian's ACDV.

75.     TD Bank violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Fraudulent Account was the product of identity theft.

**Plaintiff Receives Calls from Debt Collectors in Connection with the TD Bank Fraudulent Account**

76.     At some point after Plaintiff's 2023 Dispute, Plaintiff began receiving calls from a debt collector about the TD Bank Fraudulent Account.

77.     Plaintiff was confused to receive the collection calls as he does not have any outstanding balance from TD Bank.

78.     Frustrated by the lack of resolution, Plaintiff visited a TD Bank branch in Fort Lauderdale. The branch manager assured him the TD Bank Fraudulent Account would be removed. However, Plaintiff continued to get calls from debt collectors regarding the debt a few

weeks after speaking with the Fort Lauderdale TD Bank branch manager, indicating that the issue remained unresolved.

79.     Plaintiff decided to answer one of the debt collection calls. After explaining the situation to the collector and mentioning that his attorneys would get involved, Plaintiff noticed that the TD Bank Fraudulent Account was eventually removed from his credit reports when he checked them again.

**Plaintiff Obtains His Credit Reports and Learns the Credit Bureau Defendants are Still Reporting the Discover Account and Other Inaccurate Information in Plaintiff's Consumer Files**

80.     In or around February 2024, Plaintiff obtained copies of his consumer files from the Credit Bureau Defendants and, upon review, saw the following identity theft information reporting to his consumer reports which did not belong to him:

> (a) Discover Credit Card Account
> Partial Acct #: x6249
> Date Opened: December 30, 2022
> Balance: $7,068
> Status: Charge Off

> (b) Ten (10) different addresses in the Hollywood, Tampa, Miami, Jacksonville, Flagler Beach, and Fort Lauderdale Areas.

81.     Plaintiff felt helpless and was distraught at the realization that the Defendants' inaccurate reporting of identity theft information would be a problem he may have to deal with for a long time.

82.     On March 21, 2024, Plaintiff filed an FTC affidavit officially stating under penalty of perjury that he is a victim of identity theft.

**Plaintiff's March 2024 Dispute to the Credit Bureau Defendants**

83.     Concerned that Discover would continue to inaccurately report the Fraudulent Account to one or more Credit Bureau Defendants, Plaintiff determined that he needed to escalate

the issue to prevent further damage to his credit files and reports.

84.     On or about March 27, 2024, Plaintiff disputed the Discover Fraudulent Account with the Credit Bureau Defendants ("March 2024 Dispute"). Specifically, Plaintiff disputed that the Fraudulent Account was not his, but rather the product of fraud and identity theft.

85.     Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute, including, but not limited to, Plaintiff's FTC affidavit, a copy of his driver's license, and a copy of his social security card.

86.     Plaintiff requested that the identity theft information be blocked from his credit file.

**The Credit Bureau Defendant' Method for Considering Consumer Credit Report Disputes**

87. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

88. The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance.  e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

89. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."

90. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

91. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

92. Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

93. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

94. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

95. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

96. The data furnishers, like Discover and TD Bank, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

97. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Equifax's March 2024 Unreasonable Dispute Reinvestigation**

98. On or about April 9, 2024, Equifax received Plaintiff's March 2024 Dispute and request that identity theft information be blocked from his credit file.

99. Upon information and belief, Equifax failed to send Discover an automated credit dispute verification ("ACDV") pursuant to Plaintiff's March 2024 dispute to Equifax.

100.     On April 25, 2024, Equifax sent a letter to Plaintiff wherein it communicated that that it needed more information to verify Plaintiff's identity.

101.     Equifax failed to adequately review all of the information provided to it by Plaintiff.

102.     Equifax failed to reinvestigate Plaintiff's March 2024 dispute and failed to block the identity theft information.

103.     Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

104.     Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Trans Union's March 2024 Unreasonable Dispute Reinvestigation**

105.     On or about April 9, 2024, Trans Union received Plaintiff's March 2024 Dispute and request that identity theft information be blocked from his credit file.

106.     Upon information and belief, Trans Union failed to send Discover an automated credit dispute verification ("ACDV") pursuant to Plaintiff's March 2024 dispute to Trans Union.

107.     Trans Union failed to adequately review all of the information provided to it by Plaintiff.

108.     Trans Union continued to report the Discover Fraudulent Account and incorrect address information as demonstrated on a credit report Plaintiff obtained from Trans Union dated June 20, 2024.

109.     Trans Union failed to reinvestigate Plaintiff's March 2024 Dispute and failed to block the identity theft information.

110.     Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable

*Jacob Arthur Lyle v. Experian Information Solutions, Inc. et. al.*
COMPLAINT

investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

111.     Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Experian's March 2024 Unreasonable Dispute Reinvestigation

112.     On or about April 4, 2024, Experian received Plaintiff's March 2024 Dispute and request that identity theft information be blocked from his credit file.

113.     On April 17, 2024, Plaintiff called Experian to follow up on his dispute.

114.     Experian informed Plaintiff that it had deemed his dispute suspicious and that it was not submitted by him. However, Plaintiff confirmed that he did in fact submit the dispute.

115.     Upon information and belief, Experian failed to send Discover an automated credit dispute verification ("ACDV") pursuant to Plaintiff's March 2024 dispute to Experian.

116.     On April 17, 2024, Experian sent a letter to Plaintiff communicating that the March 2024 Dispute was not authorized by Plaintiff.

117.     Thereafter, the Discover Fraudulent Account was not removed or blocked from his credit file.

118.     Experian failed to reinvestigate Plaintiff's March 2024 Dispute and failed to block the identity theft information.

119.     Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

120.     Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Plaintiff's April 2024 Dispute to Experian and Equifax**

121.    Upset that his disputes were not taken seriously and concerned that eventually someone might seek to collect the approximately $7,000.00 balance on the Discover Fraudulent Account, and that the continued reporting of the Discover Fraudulent Account could jeopardize Plaintiff's access to credit or even lead to credit revocation, Plaintiff determined that he needed to dispute the Discover Fraudulent Account again.

122.    Therefore, on or about April 19, 2024, Plaintiff again disputed the Discover Fraudulent Account with the Experian. Specifically, Plaintiff disputed that the Discover Fraudulent Account was not his, but rather the product of fraud and identity theft.

123.    Also, on or about April 30, 2024, Plaintiff again disputed the Discover Fraudulent Account with Equifax. Specifically, Plaintiff disputed that the Discover Fraudulent Account was not his, but rather the product of fraud and identity theft.

124.    Plaintiff provided sufficient information with each of his April 2024 Disputes to Experian and Equifax to identify his credit file and provided sufficient information to support his dispute, including, but not limited to, the FTC Affidavit, a copy of his driver's license, and a copy of his social security card.

125.    Plaintiff requested that the identity theft information be blocked from his Experian and Equifax credit files.

**Equifax's April 2024 Unreasonable Dispute Reinvestigation**

126.    On or about May 3, 2024, Equifax received Plaintiff's April 2024 dispute and request that the identity theft information be blocked and removed from his credit file.

127.    Equifax sent Defendant Discover an automated credit dispute verification ("ACDV") pursuant to Plaintiff's April 2024 dispute to Equifax.

128.    Discover received Equifax's ACDV and did not adequately reinvestigate Plaintiff's

dispute.

129.     On June 7, 2024, Equifax issued dispute results to Plaintiff wherein it communicated that the Discover Fraudulent Account was verified as accurate. However, Equifax did delete the disputed address information from Plaintiff's credit file.

130.     Equifax failed to adequately review all of the information provided to it by Plaintiff.

131.     Equifax failed to reinvestigate Plaintiff's April 2024 dispute and failed to block the identity theft information.

132.     Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

133.     Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Experian's April 2024 Unreasonable Dispute Reinvestigation**

134.     On or prior to April 23, 2024, Experian received Plaintiff's April 2024 Dispute and request that identity theft information be blocked from his credit file.

135.     Upon information and belief, Experian sent an ACDV to Discover in connection with Plaintiff's April 2024 Dispute.

136.     Thereafter, Plaintiff did not receive a response from Experian in connection with his April 2024 Dispute.

137.     Upon information and belief, Experian failed to respond to Plaintiff's April 2024 Dispute.

138.     Upon information and belief, Experian failed to reinvestigate Plaintiff's April 2024 dispute and failed to block the identity theft information.

139.     Upon information and belief, Experian continues to report the Discover Fraudulent Account as part of Plaintiff's credit file.

140.     Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

141.     Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Defendant Discover's April 2024 Unreasonable Dispute Investigation**

142.     Sometime after April 19, 2024, and upon information and belief, Discover failed to adequately review all of the information provided to it by Plaintiff in connection with Plaintiff's April 2024 Dispute to Equifax.

143.     Sometime after April 4, 2024, and upon information and belief, Discover verified the Discover Fraudulent Account as accurate in response to Equifax's ACDV.

144.     Discover violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Discover Fraudulent Account was the product of identity theft.

**Plaintiff Applies for a Home Loan with MidFlorida Credit Union and is Denied**

145.     On or about June 11, 2024, Plaintiff applied for a home loan with MidFlorida Credit Union ("MFCU"). Plaintiff wanted to invest in property and develop a piece of land that he would eventually use as an Airbnb for supplemental income.

146.     In order for MFCU to make a determination on Plaintiff's credit application, it would need to obtain copies of Plaintiff's credit files. Plaintiff provided MFCU with his personal identification information, including his Social Security number, and authorized it to obtain his

*Jacob Arthur Lyle v. Experian Information Solutions, Inc. et. al.*
COMPLAINT

credit files.

147.     Upon information and belief, on or about January 25, 2024, MFCU purchased a tri-merged consumer report from the Credit Bureau Defendants, which contained consolidating data concerning Plaintiff from all the Credit Bureau Defendants, who sold a consumer report about Plaintiff to MFCU in relation to Plaintiff's home loan credit application.

148.     Shortly thereafter, Plaintiff received a notice from MFCU denying his credit application.

149.     Upon information and belief, Plaintiff was denied the MFCU home loan due to the Credit Bureau Defendants reporting of the Discover Fraudulent Account on consumer reports concerning Plaintiff.

150.     Plaintiff was distressed and dismayed by the credit denial because he knew that the Discover Fraudulent Account did not belong to him.

151.     Each Credit Bureau Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**PLAINTIFF'S DAMAGES**

152.     Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

153.     Plaintiff disputed directly with Discover and TD Bank, on multiple occasions and explained that the Fraudulent Accounts were fraudulently opened and that he was the victim of identity theft.

154.     Plaintiff filed a police report.

155.     Plaintiff filed an FTC ID Theft Report.

156.     Plaintiff disputed with the Credit Bureau Defendants multiple times throughout

2023 and 2024.

157.     Plaintiff immediately identified himself as an identity theft victim and requested from that the Credit Bureau Defendants block and remove the account information that was the product of identity theft.

158.     Experian failed to block and remove the TD Bank Fraudulent Account that was the product of identity theft despite Plaintiff's dispute.

159.     The Credit Bureau Defendants failed to block and remove the Discover Fraudulent Account, that was the product of identity theft despite Plaintiff's multiple disputes.

160.     Instead, the Credit Bureau Defendants repeatedly disregarded Plaintiff's credible disputes.  Often responding to a victim of identity theft that the furnisher of the account that was the product of identity theft had verified the account as accurate.

161.     The Credit Bureau Defendants understand it is often the case that an identity thief's activities, often designed intentionally to fabricate information into a credit file, will cause false information to appear on an identity theft victim's credit file.

162.     Despite Plaintiff's multiple disputes to the Credit Bureau Defendants that the TD Bank Fraudulent Account was the product of fraud, and he was a victim of identity theft, Equifax, Experian, and Trans Union hardly waivered in their refusals to block the information.

163.     Plaintiff reasonably believe that Defendant TD Bank initially verified the TD Bank Fraudulent Account as accurate to Experian, inaccurately suggesting that Plaintiff was responsible for the TD Bank Fraudulent Account.

164.     Plaintiff reasonably believes that Defendant Discover verified the Discover Fraudulent Account as accurate to Equifax, Experian, and Trans Union inaccurately suggesting that Plaintiff was responsible for the Discover Fraudulent Account.

165.     As a direct result of Experian's ardent refusal to block the TD Bank Fraudulent Account and Discover Fraudulent Account, which were the product of identity theft, Experian has continued to saddle Plaintiff with an open credit card account, at least with regards to the Discover Fraudulent Account, that was the product of identity theft.

166.     As a direct result of Defendant Equifax's ardent refusal to block the Discover Fraudulent Account, which was a product of identity theft, Equifax has continued to saddle Plaintiff with an open credit card account that was the product of identity theft.

167.     As a direct result of Trans Union's ardent refusal to block the Discover Fraudulent Account, which was a product of identity theft, Trans Union has continued to saddle Plaintiff with an open credit card account that was the product of identity theft.

168.     Further, as a direct result of Discover's verification of the disputed Discover Fraudulent Account to the Credit Bureau Defendants, Discover has continued to saddle Plaintiff with an open credit card account which was the product of identity theft.

169.     Further, as a direct result of TD Bank's initial verification of the disputed TD Bank Fraudulent Account to Experian, TD Bank continued to saddle Plaintiff with an open credit account, which was the product of identity theft, for some time.

170.     Due to Defendants' ardent refusals to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

171.     Further, and due to Defendants' inexplicable refusal to block the identity theft information from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with the Credit Bureau Defendants, and Discover, repeatedly, to no avail.

172.     Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety.

*Jacob Arthur Lyle v. Experian Information Solutions, Inc. et. al.*
COMPLAINT

Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes.

173.    As a result of Defendants' conduct, Plaintiff was unable to invest in real property that would allow him to earn a supplemental income.

174.    Furthermore, Plaintiff's credit score has suffered tremendously as a result of Defendants' conduct. Bank of America reduced Plaintiff's credit limit to $1,000, and closed two other credit accounts belonging to Plaintiff.

175.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

176.    At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

177.    Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time he receives another communication from Defendants.  His ongoing stress and anxiety regarding the situation have affected him and his relationships negatively.

178.    The Credit Bureau Defendants have a long history of disregarding the credit reporting rights of identity theft victims under the FCRA.  For example, in the very similar matter of April Hendrix vs. Equifax, et. al., (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several credit reporting agencies, including the Credit Bureau Defendants, over their repeated wrongful removal of security freezes, release of his credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on his credit reports.

179.     The Hendrix suit put the Credit Bureau Defendants on notice several years ago that their respective policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

180.     The Credit Bureau Defendants have had years of notice in the form of federal lawsuits, despite it all, the Credit Bureau Defendants did not take any better steps to protect the Plaintiff here.

181.     The respective internal policies and procedures of the Credit Bureau Defendants do not appear to place any value on its obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose. Nor do the Credit Bureau Defendants' respective policies and procedures respect their statutory duties to enforce or at minimum add security freezes and fraud alerts as requested by the consumer.

182.     As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the data furnishers, like Discover and TD Bank here, despite numerous court decisions admonishing this practice.  See *Cushman v. Trans Union Corp*., 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc*., 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

183.     The Credit Bureau Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

184.     The Credit Bureau Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

185.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; loss of economic opportunity; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory credit card account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory credit card account that was the product of identity theft.

186.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(the Credit Bureau Defendants)**

187.     Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

188.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the

information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

189.    On at least one occasion, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

190.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Credit Bureau Defendants readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had a credit card account and that he was delinquent on at least one occasion.

191.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

192.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

193.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

194.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; loss of economic opportunity; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

195.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional

distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

196.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

197.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## (Defendants Equifax, Experian, and Trans Union)

198.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

199.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day limitation for the completion of such an investigation. Id.

200.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from

the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

201.    On numerous occasions in 2023 and 2024, Plaintiff disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the Discover Fraudulent Account, as well as the TD Bank Fraudulent Account specifically with regards to Experian, that was the product of identity theft which was a very stressful situation for the Plaintiff.

202.    Plaintiff disputed the identity theft information to the Credit Bureau Defendants several times to no avail.

203.    On at least one occasion, Plaintiff supported his dispute with a copy of the FTC ID Theft Report.

204.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Equifax conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

205.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

206.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

207.     Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with the Credit Bureau Defendants, repeatedly.

208.     The Credit Bureau Defendants' repeated refusals to block the disputed identity theft information provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

209.     Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

210.     Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

211.     Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

212.     As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; loss of economic opportunity; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

213.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

214.     The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

215.     Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (Defendants Equifax, Experian and Trans Union)

216.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

*Jacob Arthur Lyle v. Experian Information Solutions, Inc. et. al.*
COMPLAINT

217.     Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

218.     Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

219.     Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

220.     Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim.  Plaintiff further supported the fact that he was an identity theft victim by providing to the Credit Bureau Defendants copies of the FTC IDT Report.

221.     The Credit Bureau Defendants should have blocked the identity theft information but failed to do so at every turn.

222.     As a result of the Credit Bureau Defendants ' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; loss of economic opportunity; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

223.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

224.     The Credit Bureau Defendants' conduct, actions, and inactions were willful,

rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

225.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV
### 15 U.S.C. § 1681s-2b
### Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer
### (Defendant Discover Only)

226.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

227.    Discover refused to remove information that was the product of identity theft—namely the Discover Fraudulent Account.

228.    Discover violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same.

229.    As a result of Discover's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; loss of economic opportunity; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the an open and derogatory loan account that was the product of identity theft.

230.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional

distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Discover.

231.    Discover's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Discover was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

232.    Plaintiff is entitled to recover attorneys' fees and costs from Discover in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT V**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information and Review of all**
**Relevant Information Provided by the Consumer**
**(Defendant TD Bank Only)**

233.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

234.    TD Bank initially refused to remove information that was the product of identity theft—namely the Fraudulent Account.

235.    TD Bank violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same.

236.    As a result of TD Bank's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; loss of economic opportunity; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product

of identity theft; and, the expenditure of labor and effort disputing and trying to remove the an open and derogatory loan account that was the product of identity theft.

237.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by TD Bank.

238.    TD Bank's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, TD Bank was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

239.    Plaintiff is entitled to recover attorneys' fees and costs from TD Bank in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b)    An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, et seq.;

(c)    An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

*Jacob Arthur Lyle v. Experian Information Solutions, Inc. et. al.*
COMPLAINT

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 3rd day of October 2024,

By: */s/ David Pinkhasov*
David Pinkhasov, FL #1040933
**CONSUMER ATTORNEYS**
72-47 139th Street
Flushing, NY 11367
T: (718) 701-4605
dpinkhasov@consumerattorneys.com

Catherine Tillman, Esq., FL #0057663
**CONSUMER ATTORNEYS**
8095 N. 85th Way
Scottsdale, AZ 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorneys for Plaintiff,*
*Jacob Arthur Lyle*

*Jacob Arthur Lyle v. Experian Information Solutions, Inc. et. al.*
COMPLAINT